UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT P. HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:14-CV-0456 JD |
| v. | ) |
| | ) |
| MARK LEVENHAGEN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Robert P. Hudson, a *pro se* prisoner, filed a complaint alleging that he was denied proper medical treatment after part of the ceiling fell on him in the shower. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . .." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, this court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

1. CLAIMS AGAINST SUPERINTENDENT MARK LEVENHAGEN

Hudson alleges that when he and others made multiple complaints to Superintendent Mark Levenhagen about cracks in the shower ceiling between June and September 2012, they were told that it would be fixed. However, repairs had not been made by September 20, 2012, when part of the ceiling fell on him – knocking him to the floor and rendering him unconscious. In this complaint,

he is suing Superintendent Levenhagen for housing him under conditions that violated the Eighth Amendment. Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks and citations omitted). However, a prison official only violates the Eighth Amendment if he is deliberately indifferent to conditions posing a substantial risk of serious harm. *Id.* at 834-35.

In retrospect, it is evident that the ceiling cracks posed such a risk, but Hudson has not presented factual support for an allegation that Superintendent Levenhagen was deliberately indifferent to that risk. Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). Negligence does not satisfy the "deliberate indifference" standard, *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994), and it is not enough to show that a prison official merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Deliberate indifference can be inferred only where there is a strong likelihood rather than a mere possibility that injury will occur. *Watts v. Laurent*, 774 F.2d 168, 172

(7th Cir. 1985). Prison officials are not expected to eliminate the possibility of all dangers. *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991).

When Superintendent Levenhagen was notified of the existence of the cracks, he responded that they would be fixed. Hudson has not explained what Superintendent Levenhagen was told that would have alerted him to there being an imminent danger of collapse which would have necessitated an immediate response. Neither has he alleged that Superintendent Levenhagen delayed the repairs because he did not care whether Hudson was injured. Though Hudson also alleges that employees who worked for Superintendent Levenhagen did not respond properly, those omissions (if any) do not implicate Superintendent Levenhagen because "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). There is no general *respondeat superior* liability under 42 U.S.C. § 1983. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, Hudson has not plausibly alleged that Superintendent Levenhagen was deliberately indifferent. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S.

at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Therefore Superintendent Levenhagen will be dismissed.

## 2. CLAIMS AGAINST DOCTOR LIAW

Hudson states that when he returned from the hospital emergency room where he had been treated for his injuries, he was taken to the Westville Correctional Facility Health Care Unit and seen by Dr. Liaw. Hudson states that Dr. Liaw prescribed him a 30 day supply of Naproxen (500 mg) and issued him a bottom bunk and 3 day lay-in pass.

Hudson argues that he wanted to stay in the infirmary rather than being sent back to his cell block to recuperate. "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). Though Hudson states that he was in pain and could barely move, he has not explained why it was not reasonable for him to rest in his own cell rather than in the infirmary. He has not explained why he needed to be constantly monitored by medical personnel rather than by guards who could call medical personnel if needed. Though Hudson argues that he missed two meals because guards would not honor his lay-in pass and refused to bring him a meal tray, he does not allege that Dr. Liaw knew that his pass would be refused or that Hudson would miss meals if he was not in the infirmary. Therefore Hudson has not plausibly alleged

4

that Dr. Liaw was deliberately indifferent for issuing him a bottom bunk and 3 day lay-in pass rather than admitting him to the infirmary.

Hudson argues that he asked for stronger pain medication instead of the Naproxen, but a "disagreement with medical professionals [does not] state a cognizable Eighth Amendment Claim under the deliberate indifference standard of *Estelle v. Gamble* [429 U.S. 97 (1976)]." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

> Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.

*Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quotation marks and citation omitted).

> Arguably, all pain beyond what is necessary to keep the mind cognizant of an untreated ailment is "needless." It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.

*Id.* Here, Hudson has not plausibly alleged that Dr. Liaw was deliberately indifferent for not prescribing stronger pain medication as soon as he returned from the emergency room. He does not say that the emergency room doctor prescribed something different or that Dr. Liaw had any reason to believe that Naproxen was not an appropriate prescription when he wrote it on September 20, 2012. Though Hudson explains that the Naproxen did not work to control his pain after he had taken it, he has not provided any facts to support the claim that Dr. Liaw was deliberately indifferent when he prescribed it. Though Hudson states that Naproxen is inexpensive, cost is not the issue. "The administration of pain killers requires medical expertise and judgment. Using them entails risks that

doctors must consider in light of the benefits." *Id.* at 591. Therefore Hudson has not plausibly alleged that Dr. Liaw was deliberately indifferent for prescribing Naproxen rather than an alternative pain killer.

More than three months later, Hudson saw Dr. Liaw again. On January 8, 2013, Hudson "was taken to the Health Care Unit because [he] was in serious pain, and unable to move around or walk to the chow hall, shower, etc., due to [his] having sharp severe pains in [his] back, neck, shoulders, hips and legs." DE 1 at 13. In response, Dr. Liaw told him that he would not give him any medical treatment or medication. Instead, he gave him a six week bottom bunk pass and restricted him from lifting more than fifteen pounds for 90 days. Though Hudson does not mention how many meals he missed following this doctor's appointment, he says that he was unable to walk to the chow hall. As such, Dr. Liaw's lower bunk and weight restriction passes did nothing to address how Hudson was to obtain food. Without even a lay-in pass, it is unclear how Hudson was able to eat. Moreover, given Hudson's description of his pain and mobility impairment, he has plausibly alleged that Dr. Liaw's medical treatment was blatantly inappropriate. Therefore, Hudson will be granted leave to proceed against Dr. Liaw for being deliberately indifferent to his serious medical needs on January 8, 2013.

More than eight months later, Hudson saw Dr. Liaw one more time. On September 13, 2013, Hudson saw the doctor "[b]ecause I was unable to move or sit up to do anything whatsoever . . .." DE 1 at 15. In response, Dr. Liaw gave him a lay-in pass for five days which did not permit Hudson to have food trays brought to him. Though Hudson does not say what he did for food during those five days, based on his allegation that he was not even able to sit up, it appears that Dr. Liaw ordered that he be starved for five days. Such an order appears blatantly inappropriate. Therefore, Hudson

6

will be granted leave to proceed against Dr. Liaw for being deliberately indifferent to his serious medical needs on September 13, 2013.

### 3. CLAIMS AGAINST DOCTOR KREMBS

On September 25, 2012, Hudson went to "the Health Care Unit due to [his] getting very dizzy a lot, having migraine headache's and painful muscle spasms in [his] hips and legs . . .." DE 1 at 10. Hudson explained that he was having greater pain and that the Naproxen was not helping. Dr. Krembs declined to change his medication, but he did give him a 3 day lay-in pass as well as a one week bottom bunk pass. Two days later, Hudson returned with more severe symptoms and pain. This time Dr. Krembs only treatment was to give him a two week bottom bunk pass. The diagnosis and orders may well have been sound medical treatment. However, given the alleged ineffectiveness of the Naproxen, increase in pain, and additional symptoms, it can also be read as a plausible allegation of deliberate indifference. Though Hudson argues that he should have been sent to a hospital by Dr. Krembs (and/or Dr. Liaw), "the Constitution is not a medical code that mandates specific medical treatment." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Neither does it specify where (or by whom) that treatment must be delivered. Though it is unclear at this time whether this case is one of those extreme situations described in *Snipes* where the prescribed medical treatment was so blatantly inappropriate as to evidence intentional mistreatment, Hudson will be granted leave to proceed against Dr. Krembs for being deliberately indifferent to his serious medical needs on September 25, 2012, and September 27, 2012.

### 4. CLAIMS AGAINST NURSE SELF

Hudson alleges that on more than seven occasions, Nurse Self denied him medical attention and prevented him from seeing a doctor to treat his serious medical needs. However, he has not

provided any specific information about any of these incidents in his complaint and he has only identified three occasions when he says that this happened: January 1, 2013, February 6, 2013, and August 24, 2013.

Hudson has not provided any paperwork related to the January 1, 2013, event. Neither has he provided any details about how Nurse Self prevented him from receiving medical treatment on that day. However, January 1, 2013, was New Year's Day and it is unlikely that anyone could obtain medical treatment from a doctor on that day unless they had a medical emergency. Hudson does not describe why or how his condition was different or worse on that day. But the complaint states that he saw Dr. Liaw only a week later on January 8, 2013. Thus he has not plausibly alleged that Nurse Self was deliberately indifferent to his medical care or prevented him from seeing a doctor on January 1, 2013.

On February 6, 2013, Nurse Self responded to a Request for Health Care in which Hudson stated that he did not have any more Naproxen. The response said, "The order was a one-time order for the Naproxen. No refills. You can order it off of commissary or you can be seen again in nurse sick call." DE 1-1 at 9. This was not a denial of medical attention. Neither did it prevent Hudson from seeing a doctor. Rather it was a factual statement about his prescription. Indeed, if he had money to make a commissary purchase, it did not even prevent him from obtaining Naproxen. The Constitution does not require free medical care. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012). Moreover, it informed him that he could seek further assistance during a sick call.

On August 24, 2013, Hudson wrote "I have been having pain in my hip and back. I would like to be seen ASAP. Thank you." DE 1-1 at 11. In response, Nurse Self wrote, "Tylenol on Commissary [and] Refusal Obtained." *Id.* The attached Refusal form was signed by both Hudson

8

and Nurse Self. It shows that he was told that a CT scan of his spine indicated that it was normal and recommended that if his symptoms got worse, he should fill out another Health Care Request form. Nothing in Hudson's request indicates that he was having a medical emergency which required immediate care. Prisoners are "not entitled to demand specific care [nor] entitled to the best care possible" *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). Nothing in Nurse Self's response on August 24, 2013, provides any support for Hudson's claim that she was deliberately indifferent to his need for care.

Hudson alleges that Nurse Self denied him medical treatment at least five other times. However, given that he has not provided any specific details about those other occasions (not even the dates), it is not plausible to infer that they are different than the three interactions analyzed here. Because Hudson has not plausibly alleged that Nurse Self was deliberately indifferent to his serious medical needs, the claims against her will be dismissed.

For the foregoing reasons, the court:

(1) **GRANTS** Robert P. Hudson leave to proceed against Dr. Liaw in his individual capacity for compensatory damages for being deliberately indifferent to his serious medical needs on January 8, 2013, and September 13, 2013, in violation of the Eighth Amendment;

(2) **GRANTS** Robert P. Hudson leave to proceed against Dr. Krembs in his individual capacity for compensatory damages for being deliberately indifferent to his serious medical needs on September 25, 2012, and September 27, 2012, in violation of the Eighth Amendment;

(3) **DISMISSES** all other claims;

(4) **DISMISSES** Superintendent Mark Levenhagen and Nurse Self;

(5) **DIRECTS** the clerk to transmit the summons and USM-285 forms for Dr. Liaw and Dr. Krembs to the United States Marshals Service along with a copy of the complaint and this order;

(6) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Dr. Liaw and Dr. Krembs; and

(7) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Dr. Liaw and Dr. Krembs respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: June 16, 2014

                                          /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court